NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 07-807

STATE OF LOUISIANA

IN THE INTEREST OF J.C., J.C., J.R.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 06J71
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Michael G. Sullivan, Glenn B. Gremillion, and Billy Howard Ezell, Judges.

AFFIRMED.

Lewis H. Pitman, Jr.
Indigent Defender Board
110 West Washington Street
New Iberia, LA 70560
(337) 365-4006
Counsel for Defendants/Appellants:
L. R.
J. R., Jr.

**Debra Keigh Basile**
**825 Kaliste Saloom**
**Brandywine I, Suite 218**
**Lafayette, LA 70508**
**(337) 262-5955**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana Department of Social Services,**
**Office of Community Services**

**Ezell, Judge.**

The mother and father appeal a trial court judgment terminating their parental rights of three minor children. The youngest child was the father's biological child, another child's father was unknown, and the third child's father did not contest termination of his rights. After reviewing the record, we affirm the trial court's judgment.

**FACTS**

On February 22, 2005, the State of Louisiana, Department of Social Services, Office of Community Services (OCS) received a report of alleged neglect by dependency and inadequate shelter concerning seven minor children ranging in ages from sixteen to two. The three minor children at issue were placed in foster care, and the other children were placed with relatives.

During the course of the OCS investigation from February 22, 2005, through March 3, 2005, it obtained information that there was a domestic disturbance between the mother and father. The Sheriff's Department responded to a domestic disturbance between the mother and father involving a knife and firearm. The mother was noted to be hallucinating, stating that women were living in her sofa and under the floor and the father admitted that both of them had been using crack cocaine that day. The two youngest children were present at the time. Both parents tested positive for cocaine on March 2, 2005. At the time, the family members were living in a two-bedroom mobile home.

The children were adjudicated in need of care on May 17, 2005. A case plan was developed which included parenting classes, substance abuse treatment, securing and maintaining employment, and completion of their new four-bedroom home. The parents were also supposed to complete psychological testing and attend a domestic

1

violence intervention program. The case plan was in effect for six months. Three more case plans went into effect in September 2005, March 2006, and September 2006.

On July 17, 2006, the OCS filed a petition to terminate parental rights and certification for adoption of the three youngest children. A hearing on the matter was held on January 29, 2007. The trial court agreed that termination was in the best interests of the children stating:

> From the evidence that the Court has heard, the Court, is of the opinion that the State has proven it's [sic] case for the termination of parental rights .... I guess my comment at this point is that the evidence of the State, as I said again, establishes by clear and convincing evidence that the parental rights of these parents should be terminated and that it is in the best interest[s] of the children to terminate the parental rights and set them free for adoption.

> In addition to the significant evidence and substantial evidence that the State has produced showing that the children have been in custody approximately two years and that the parents were given opportunities to rehabilitate themselves with respect to substance abuse, issues of domestic violence and non-able to do so and this time period which makes it, for them, inconvenient, unfortunate and too late.

Judgment terminating the parental rights was signed on February 2, 2007. From this judgment, both the mother and father appealed.

## DISCUSSION

The parents claim that the trial court was too quick in terminating their parental rights. They state that their drug problems are now under control and that it was their problem with drugs that prevented them from complying with the case plan. They argue that they should be given six additional months to prove themselves. On the other hand, the OCS argues that its fundamental concern has been the inability of the parents to protect their children by refraining from drug abuse, repeated incarcerations and domestic violence, as well as their inability to provide their children with a safe place to live.

2

In termination proceedings, [the] court must carefully balance the two private interests of the child and the parents. While the parents have a natural, fundamental liberty interest in the continuing companionship, care, custody and management of their children, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

*State ex rel. J.M.*, 02-2089, p. 8 (La. 1/28/03), 837 So.2d 1247, 1252 (citations omitted).

A trial court's findings on the factually-intense termination of parental rights issues are governed by the manifest error standard of review. *State ex rel. SNW v. Mitchell*, 01-2128 (La. 11/28/01), 800 So.2d 809.

The OCS sought termination based on La.Ch.Code art. 1015(5) which provides as a ground for termination:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Article 1015(5) provides a three-pronged requirement for termination: (1) lapse of one year; (2) lack of substantial compliance with a court-approved case plan; and (3) lack of a reasonable expectation of significant improvement in the near future. *State in the Interest of SNW*, 800 So.2d 809. Obviously, the father and mother are claiming that the OCS failed to prove the last requirement, that there is a lack of reasonable expectation of significant improvement in the near future.

Louisiana Children's Code Article 1036(D) provides that this requirement may be proven by:

3

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The evidence at trial established that for the two years the case was under OCS supervision, the parents failed to follow any of the requirements of the case plan. Both the father and mother were arrested and served time in prison on several occasions. It was not until they were in prison that they participated in drug abuse programs.

In October 2005, the mother was sent to the Acadian Recovery Center for substance abuse counseling. The OCS caseworker even brought her children to visit her while she was there, but the mother left before she finished treatment. At this point, the mother was referred to the Iberia Parish Addictive Disorder for help, but she failed to appear. In November of 2005, the father was arrested for domestic abuse battery. During that same month, the mother was also arrested for felony battery. The mother was arrested again on May 16, 2006, when she tried to run over her husband and crashed into the house. She was released in July 2006 after serving fifty-nine days. When the OCS caseworker brought the children to visit the mother in jail, she was informed that the mother was participating in the drug program KITE.

The father went to jail in February 2006 on drug charges and was released into the drug court program in May 2006. However, in July 2006, the father was arrested again because he was in violation of the drug court requirements. He served six

4

months in jail and was released just prior to the termination hearing.

In August 2006, another OCS caseworker took over the case. She indicated that the requirements of the case plans did not change, but still the mother and father never attended any domestic violence programs or underwent psychological evaluations. At the time of trial, the house was still not completed, continuing to lack electricity, plumbing, air conditioning, and flooring.

The OCS caseworker scheduled a visit at McDonald's for August 24, 2006. The mother never showed up which upset the children. The OCS caseworker testified that the mother has not attempted to visit the children since that time.

Both parents argue that the drug programs they participated in while in prison helped them and that they are new people ready to proceed with the case plan requirements. While the father had only been out of jail for about a month before trial, the mother had been out for approximately six months and had not made any efforts to complete any requirements of the case plan. During the month that the father had been out of jail, he made no attempt to comply with the case plan or to visit his child. The mother testified that she had been attending AA meetings at different places but was not able to get in touch with the caseworker to let her know. She offered no proof that she had been attending these meetings. The mother admitted that she was familiar with the case plan objectives because she had dealt with the agency on substance abuse claims resulting in her children being placed in foster care in 2000 and 2001. Also, while the parents had reconciled a month before the trial, they had not attended any domestic violence programs to help their relationship.

We cannot say that the trial court erred in finding that the evidence was clear and convincing that there is a lack of reasonable expectation of significant improvement on behalf of the mother and father. This case has been ongoing for two

years, and the mother and father both testified that it was only after they had been incarcerated that they now had the help they needed to reform. However, they failed to offer any proof that after they were released from prison that they have made any steps toward fulfilling the requirements of the case plan. There is no indication that even given six months the parents would follow the requirements of the case plan. It is in the best interests of these three minor children that the parents' rights be terminated.

For the foregoing reasons, the judgment of the trial court is affirmed terminating the parental rights of the Appellants with cost of appeal assessed equally between them.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3 Uniform Rules, Court of Appeals.